# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHNATHAN H. IRONS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:03CV 513 CAS(LMB) |
| | ) | |
| DAVE DORMIRE, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER AND REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the petition of Johnathan H. Irons for a writ of habeas corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b).

### Procedural History

Petitioner is presently incarcerated at the Missouri State Penitentiary in Jefferson City, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Charles County, Missouri. See Respondent's Exhibit B at 81-82. Petitioner was found guilty after a jury trial of assault in the first degree, armed criminal action, and burglary in the first degree. See id. The court sentenced petitioner to consecutive terms of twenty-five years imprisonment for assault and armed criminal action, and a concurrent term of fifteen years imprisonment for burglary. See id.

Petitioner raised five points on direct appeal of his convictions. Petitioner first argued that the trial court erred in overruling his objections and in admitting an O'Fallon Police Department Acknowledgment and Waiver of Rights form showing petitioner's refusal to make any statement

because the introduction of this exhibit violated petitioner's right to due process and privilege against self-incrimination. See Resp't Ex. D at 8. Petitioner next argued that the trial court erred in overruling his objection to a statement the prosecutor made in his closing argument because the statement assumed facts that had not been presented to the jury. See id. at 9. In his third point relied on, petitioner argued that the trial court erred in overruling his objection to the prosecutor's statement in closing argument because the statement violated petitioner's right to due process and his privilege against self incrimination by commenting on the fact that petitioner did not testify. See id. at 10. In his fourth point relied on, petitioner argued that the trial court erred in overruling defense counsel's hearsay objection and allowing hearsay statements, because the ruling deprived petitioner of his right to due process, confrontation, and a fair trial. See id. at 11. In his final point relied on, petitioner argued that the trial court erred when it overruled petitioner's objection and allowed Tim Russell to testify because Mr. Russell had been in the courtroom during prior testimony in violation of the witness exclusion rule, thereby denying petitioner his right to a fair trial. See id. at 12. On April 25, 2000, the Missouri Court of Appeals for the Eastern District affirmed petitioner's convictions in an unpublished opinion. See Resp't Ex. G.

On August 28, 2000, petitioner filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence of the Circuit Court of St. Charles County pursuant to Missouri Supreme Court Rule 29.15. See Resp't Ex. I at 1-20. After appointment of counsel, petitioner filed a First Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for Evidentiary Hearing. See id. at 27-62. In this motion, petitioner argued that he received ineffective assistance of counsel for the following reasons: (1) trial counsel failed to object to the prosecutor's statements, evidence, and argument regarding a prior burglary of the victim's home; (2) trial counsel failed to object to the prosecutor's statements in opening and closing arguments in which the

prosecutor: a) commented on petitioner's failure to testify, b) personalized his closing argument to the jury by suggesting that they would be in danger from petitioner if petitioner was acquitted, and c) urged the jury to place themselves in the situation of the burglary and assault victim and argued victim impact as a basis for petitioner's conviction; (3) trial counsel withdrew petitioner's motion to suppress identification; and (4) trial counsel failed to object to Instruction Number 7, which omitted the essential element of knowledge as required for petitioner's conviction of the crime of armed criminal action. See id. An evidentiary hearing was held on March 30, 2001, at which trial counsel Christine Sullivan testified on behalf of petitioner. See Resp't Ex. H. On April 24, 2001, the motion court denied petitioner's motion for postconviction relief in all respects. See Resp't Ex. I at 67-73. Petitioner timely filed a notice of appeal from the denial of postconviction relief. See id. at 76.

Petitioner raised three points on appeal from the denial of postconviction relief. See Resp't Ex. J. Petitioner first argued that the motion court erred in denying his postconviction relief motion without issuing specific findings of facts and conclusions of law as to two of his claims. See id. at 16. Petitioner next argued that the motion court erred in denying his claim that he received ineffective assistance of counsel in that trial counsel failed to object to the prosecutor's statements, evidence, and argument regarding a prior, uncharged burglary of the victim's home. See id. at 18. In his final point on appeal, petitioner argued that the motion court erred in denying his claim that he received ineffective assistance of counsel in that trial counsel failed to object to the prosecutor's statements in which the prosecutor commented on petitioner's failure to testify and improperly personalized his argument to the jury. See id. at 20. In an unpublished opinion filed on April 23, 2002, the Missouri Court of Appeals for the Eastern District affirmed the denial of postconviction relief. See Resp't Ex. L.

On April 30, 2003, petitioner, pro se, filed a petition for a writ of habeas corpus, raising the following grounds for relief: (1) the trial court erred in admitting an exhibit showing that petitioner received his Miranda rights; (2) the trial court erred in allowing the prosecutor to state during closing argument that a witness had identified petitioner at a preliminary hearing; (3) the prosecutor violated petitioner's privilege against self-incrimination; (4) the trial court erred in allowing a detective to present hearsay testimony; (5) the motion court failed to file sufficient findings of fact and conclusions of law; (6) trial counsel provided ineffective assistance of counsel in failing to object to the prosecutor's alleged statements, evidence, and arguments regarding uncharged conduct; and (7) trial counsel provided ineffective assistance of counsel in failing to object to an alleged reference by the prosecutor to petitioner's failure to testify. (Document Number 4). In his Response, respondent argues that petitioner's fifth ground for relief is noncognizable and petitioner's remaining grounds for relief fail on their merits. (Doc. No. 11). Petitioner has also filed a Traverse, in which he provides further argument in support of his petition. (Doc. No. 15).

On February 27, 2006, petitioner filed a "Motion to Expand the Record and Request an Evidentiary Hearing." (Doc. No. 20). On February 28, 2006, the court issued an order directing respondent to respond to petitioner's motion. (Doc. No. 21). Respondent filed a "Response to Court Order" on April 18, 2006, and petitioner has filed a "Response to Respondent's Response to Court Order." (Doc. No. 26, 28). Petitioner has also filed a "Motion for Release on Recognizance or Surety Pending the Final Decision of the U.S. District Court For the Eastern District of Missouri, with Suggestions in Support Thereof." (Doc. No. 24). Respondent has filed a Response to this motion, and petitioner has filed a filed a Reply. (Docs. No. 29, 30). As will be elaborated further in this Report and Recommendation, petitioner's grounds for relief can be sufficiently reviewed based upon the record that was presented to the state courts. As such, the court will deny petitioner's

motion for evidentiary hearing, and will grant in part and deny in part petitioner's motion to expand the record.

**Facts**

The sufficiency of the evidence is not in dispute. The evidence adduced at trial revealed that on January 14, 1997, petitioner entered the home of Stanley Stotler in O'Fallon, Missouri. Upon arriving home and entering his bedroom, Mr. Stotler encountered petitioner, who shot Mr. Stotler in the arm and head.

**Discussion**

**A.**     **Standard of Review**

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially

indistinguishable facts." 529 U.S. at 405, 120 S.Ct. at 1519. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." Id. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 410, 120 S.Ct. at 1521. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410, 120 S.Ct. at 1522.

**B.      Petitioner's Claims**

Petitioner raises seven grounds for relief. The undersigned will address each claim in turn.

### 1.      Ground One

In his first ground for relief, petitioner argues that the trial court erred in admitting Exhibit 47, an O'Fallon Police Department Acknowledgment and Waiver of Rights ("Waiver") form. See Resp't Ex. M. Petitioner contends that the Waiver form revealed that petitioner exercised his right to remain silent, in violation of his right to due process and privilege against self-incrimination. Respondent argues that the Missouri Court of Appeals properly determined that the trial court did not err in admitting the Waiver form as an exhibit because it was not used as evidence of petitioner's guilt.

The Waiver form contains five pre-printed paragraphs, each containing a Miranda right, with a space next to each for an arrestee to initial indicating he or she understands the right enumerated. After these paragraphs is a section entitled "Waiver," which states that the arrestee understands his or her rights and wishes to waive these rights and make a statement, followed by

a line for the arrestee to initial. At the bottom of the form is a section entitled "Refusal," which states, "I do not wish to make any statement at this time," followed by a signature line. Petitioner placed his initials after each Miranda right, and then signed his name on the designated space for a "Refusal," thereby indicating that he did not wish to make a statement. At trial, Detective John Neske testified that he read petitioner his Miranda rights, as set forth in the Waiver form, and that petitioner initialed the form indicating that he understood his rights. See Resp't Ex. A2 at 162-64. The trial court then admitted the Waiver form as an exhibit over the objection of defense counsel. See id. at 165. Defense counsel objected based upon her "previous motion," which was a motion to suppress evidence of petitioner's statements on the grounds that they were allegedly involuntary.

The Missouri Court of Appeals for the Eastern District found that petitioner did not timely object to the introduction of the form on the specific grounds that it was improper comment on petitioner's post-arrest silence. See Resp't Ex. G at 3. The Court noted that petitioner did not raise this specific objection until his motion for new trial. See id. The Court found that petitioner did not preserve his claim, and thus reviewed petitioner's claim for plain error. See id. The Court then held as follows:

> The law in Missouri is clear that a criminal defendant's post-arrest, post-*Miranda* silence is not admissible against him as affirmative proof of his guilt or to impeach him. *Doyle v. Ohio*, 426 U.S. 610, 618 (1976); *State v. Zindel*, 918 S.W.2d 239, 241 (Mo. banc 1996). The State contends it did not use [petitioner's] post-arrest silence as affirmative proof of guilt or to impeach him. We agree.
> The record before us is devoid of any reference at trial to [petitioner's] post-arrest silence. No reference was made by the prosecutor or any witness at trial about [petitioner's] post-arrest silence. The admission of the form into evidence did not constitute a reference to [petitioner's] silence. Assuming that it did, it is undisputed that the State did not attempt to rely on the form as affirmative proof of guilt or to impeach [petitioner]. Indeed, unrefuted evidence was adduced at trial that [petitioner] made several post-*Mirandized* statements to Detective Hanlon prior to signing the form with Detective Neske, thereby making any prosecutorial reliance on [petitioner's] post-arrest silence a moot issue. [Petitioner] was not silent after his arrest.

The Missouri Supreme Court addressed a similar issue in *State v. Mathenia*, 702 S.W.2d 840 (Mo. banc 1986), cert. denied, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986). In *Mathenia*, appellant argued the prosecutor committed a *Doyle* violation in the following exchange with the sheriff who testified at appellant's trial:

Q. Sheriff, you made the arrest of the defendant on April the 25th, '84, out at his sister's house in Madison County, Missouri?

A. Yes, sir.

Q. And after you arrested him did you advise him of his rights?

A. Yes, sir.

Q. And did he make a statement to you at the time of the arrest?

A. No, sir.

This was the only reference to appellant's post-arrest silence made at trial. The Court found that the above reference was merely preliminary to the admission into evidence of appellant's video-taped statement taken at a later date. Accordingly, the Court found appellant's post-arrest silence was not used by the State as affirmative proof of guilt or to impeach appellant. *State v. Mathenia*, 702 S.W.2d at 842. Therefore, there was no *Doyle* violation.

Here, there was no reference made at trial concerning [petitioner's] post-arrest silence. Nor was the form used as affirmative proof of [petitioner's] guilt or to impeach [petitioner]. Therefore, there was no *Doyle* violation and the trial court did not err, plainly or otherwise.

Id. at 3-5.

The Eighth Circuit has held that when a state court reviews for plain error, we may also review for plain error. See Mack v. Caspari, 92 F.3d 637, 641 (8th Cir. 1996); Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir. 1997). The Missouri Court of Appeals reviewed petitioner's claim for plain error only because petitioner did not preserve his claim for review. As such, this court is limited to plain error review. Under this standard, we will grant habeas relief only if "manifest injustice resulted" from the alleged errors. Blackmon v. White, 825 F.2d 1263, 1266 (8th Cir. 1987).

Generally, questions concerning the admissibility of evidence are matters of state law, and the issue on habeas review is not whether the evidence was properly admitted under state law. See Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Evidentiary issues can, however, form the basis for habeas relief if the error constitutes an independent

constitutional violation.  See Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998).  "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process."  Id.  (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)).  To meet this standard, a petitioner must show a reasonable probability that the evidentiary errors affected the trial's outcome.  See Meadows v. Delo, 99 F.3d 280, 283 (8th Cir. 1996).

In Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment."  426 U.S. at 619, 96 S.Ct. at 2245.  This rule is based upon "the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial." South Dakota v. Neville, 459 U.S. 553, 565, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983).

Here, the Missouri Court of Appeals properly applied Doyle and found that the exhibit at issue was not used as affirmative proof of petitioner's guilt or to impeach petitioner and was thus properly admitted.  The prosecutor did not make any reference at trial to petitioner's post-arrest silence.  In fact, as the Missouri Court of Appeals pointed out, petitioner was not silent after his arrest.  Rather, unrefuted evidence was adduced at trial that petitioner made several post-Miranda statements to another officer prior to signing the waiver form with Detective Neske.  See Resp't Ex. A2 at 164-65.  The waiver form was introduced merely to establish that petitioner received his Miranda rights.  No mention was made as to the fact that petitioner initialed the section entitled "Refusal."  Thus, no Doyle violation occurred.

Accordingly, the undersigned recommends that petitioner's first ground for relief be denied.

**2.      Ground Two**

In his second ground for relief, petitioner argues that the trial court erred in allowing the prosecutor to state during closing argument that a witness had identified petitioner at a preliminary hearing.  Petitioner contends that the prosecutor's argument was impermissible because it referred to facts not in evidence.  Respondent argues that the Missouri Court of Appeals properly determined that, although the prosecutor's statement was improper, it had no effect on the jury's decision.

The following exchange occurred during the prosecutor's closing argument:

[PROSECUTOR]: ...There is no requirement on the streets or any place else or in this country or in these instructions that you have got to be a certain age before you pull the trigger and shoot a person.  He comes in here dressed up and cleaned up.  But think about how Mr. Stotler saw him.  *And Mr. Stotler, he had a preliminary hearing.  Christine Sullivan was his attorney at that preliminary hearing.  He wouldn't have been bound over if he hadn't identified him at that preliminary hearing.*

[DEFENSE COUNSEL]: Judge, I object.  That is assuming facts not in evidence.

[PROSECUTOR]: Well, judge, it's in the file.

THE COURT: This is final argument, overruled.

Resp't Ex. A3 at 325-26 (emphasis added).

Petitioner raised this claim in his direct appeal.  The Missouri Court of Appeals denied petitioner's claim by holding:

> [Petitioner's] remaining points on appeal raise no new issues of law and
> Respondent's brief adequately sets out the controlling legal authority and applies it
> cogently to the facts of this case.  Therefore the judgment is affirmed pursuant to Rule
> 30.25(b).

Resp't Ex. G at 5.

The State, in its appellate brief, conceded that it was inappropriate for the prosecutor to refer to evidence that was not presented to the jury. <u>See</u> Resp't Ex. E at 16. The State then argued:

> However, even if closing argument is found improper, reversal is justified "only where the defendant demonstrates that the argument had a decisive effect on the jury's determination." <u>State v. Kee</u>, 956 S.W.2d 298, 303 (Mo.App. W.D. 1997). "In order to have a decisive effect, there must be a reasonable probability that, had the comments not been made, the verdict would have been different." <u>Id.</u> Appellant bears the burden of proof on this claim. <u>Id.</u> "Error, which in a close case might call for reversal, may be disregarded as harmless when the evidence of guilt is strong." <u>State v. Degraffenreid</u>, 477 S.W.2d 57, 65 (Mo. banc 1972); <u>State v. Rogers</u>, 820 S.W.2d 567, 569 (Mo.App. E.D. 1991).

<u>Id.</u> The State then described the overwhelming evidence of petitioner's guilt presented at trial, including: the identification of petitioner by the victim two weeks after the incident when shown a photographic lineup; the identification of petitioner by the victim at trial; the description the victim provided to police of the petitioner's clothing; testimony of Tim Russell, a friend of petitioner's, that petitioner had been in the victim's neighborhood the day of the incident and was seen with the same type of gun that was involved in the incident; testimony of Scott Emberton, a friend of petitioner's who saw petitioner in the neighborhood of the victim with a plastic bag similar to the one found at the scene and wearing similar clothing as described by the victim; petitioner fled from the police; petitioner changed his story to police numerous times; and petitioner admitted that he had been at the victims house the day of the incident. <u>See id.</u> at 16-18. The State argued that, in light of the overwhelming evidence of petitioner's guilt, the prosecutor's comment did not constitute reversible error. <u>See id.</u> at 18-19.

To prevail on a due process claim based on comments by the prosecutor, a petitioner must show that the prosecutor's comments "were so egregious that they fatally infected [the] proceedings and rendered [his] entire trial fundamentally unfair." <u>See</u> <u>Kellogg v. Skon</u>, 176 F.3d

447, 451 (8th Cir. 1999) (quoting <u>Hamilton v. Nix</u>, 809 F.2d 463,470 (8th Cir. 1987)).  Under this standard, a petitioner "must show that there is a reasonable probability that the error complained of affected the outcome of trial--i.e., that absent the alleged impropriety, the verdict probably would have been different." <u>Kellogg</u>, 176 F.3d at 451.  In determining whether the prosecutor's argument rendered the trial fundamentally unfair, a federal habeas court must consider the totality of the circumstances. <u>See</u> <u>id.</u>

In this case, although the prosecutor's remarks regarding facts not in evidence were improper, the remarks did not rise to the level of depriving petitioner of a fair trial.  Petitioner cannot demonstrate that the outcome of the trial would likely have been different without these remarks, especially in light of the overwhelming evidence of petitioner's guilt presented at trial.  As previously discussed, the victim positively identified petitioner at trial as the man who shot him. <u>See</u> Resp't Ex. A2 at 69, 76-77.  In addition, the victim described petitioner's clothing to police (<u>id.</u> at 75-76); witnesses saw petitioner near the scene on the day of the incident (Resp't Ex. A3 at 204-05, 221); petitioner was seen with a .25 caliber pistol, and .25 caliber shell casings were found at the scene (Resp't Ex. A2 at 116, 133-34; Resp't Ex. A3 at 222); a witness saw petitioner with a plastic bag containing compact discs on the day of the incident and a plastic bag containing a compact disc player and compact discs was found at the scene (Resp't Ex. A2 at 111-12; Resp't Ex. A3 at 223); and, after changing his story multiple times, petitioner admitted to breaking a window and entering the victim's home (Resp't Ex. C at 5).  Thus, the prosecutor's statement did not deprive petitioner of his right to a fair trial.

Accordingly, the undersigned recommends that this ground for relief be denied.

### 3. Ground Three

In his third ground for relief, petitioner argues that the prosecutor violated his privilege against self-incrimination. Specifically, petitioner contends that the trial court erred in not intervening, sua sponte, when the prosecutor made comments during his closing argument that referenced petitioner's failure to testify. Respondent argues that the Missouri Court of Appeals properly determined that the prosecutor's comments were not made to draw attention to petitioner's failure to testify.

Petitioner objects to two separate statements made by the prosecutor during closing argument. Petitioner first challenges the following statement:

> [PROSECUTOR]:...You haven't heard any testimony that [Officer] Hanlon mistreated him. You even heard testimony that he got him something to eat. You know, good and well. *If there was any evidence that Hanlon had mistreated that man, you would have heard it on this witness stand.*
>
> [DEFENSE COUNSEL]: Judge, I object. That's shifting the burden of proof.
>
> [PROSECUTOR]: No, judge, it's commenting.
>
> THE COURT: Overruled.

Resp't Ex. A3 at 325 (emphasis added). Petitioner next objects to the following statement:

> Now, you have heard the testimony before and what happened, you heard the testimony. *It's uncontroverted. It's uncontroverted, folks*, Mr. Stotler comes home from work, and he goes into his own home and he is going to go into his bedroom and change his clothes to go get his hair cut, and hears some click on the door.

Id. at 309 (emphasis added).

The Missouri Court of Appeals denied petitioner's claim on the basis that it raised no new issues of law and the State's brief adequately set out the controlling legal authority and applied it cogently to the facts of this case. See Resp't Ex. G at 5.

In its brief, the State first pointed out that petitioner did not object at trial on the basis that the prosecutor's comments were an impermissible reference to petitioner's failure to testify. <u>See</u> Resp't Ex. E at 21. The State argued that, because petitioner failed to properly preserve this issue for appeal, the claim is reviewable only for plain error. <u>See id.</u> The State then argued as follows:

> Unless a claim of error facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted, an appellate court should decline to exercise its discretion to review for plain error. <u>State v. Clemons</u>, 946 S.W.2d 206, 224 (Mo. banc 1997), <u>cert. denied</u>, 118 S.Ct. 416 (1997). Substantial latitude is allowed during closing argument, and the trial court is vested with broad discretion in determining when counsel has exceeded the permissible scope of argument. <u>State v. Kee</u>, 956 S.W.2d 298, 303 (Mo.App. W.D. 1997). A conviction will be reversed only if the improper argument had a decisive effect on the jury's determination. <u>Id.</u> In order to have a decisive effect, there must be a reasonable probability that, had the comments not been made, the verdict would have been different. <u>Kee</u>, 956 S.W.2d at 303. The defendant has the burden of proving the effect of the argument on the jury. <u>State v. Davis</u>, 965 S.W.2d 927, 930 (Mo.App. W.D. 1998).
>
> A prosecutor is not permitted to comment adversely on the defendant's failure to testify. <u>State v. Richardson</u>, 923 S.W.2d 301, 314 (Mo. banc 1996), <u>cert. denied</u>, 519 U.S. 972 (1996). A direct reference to a defendant's failure to testify is one where the prosecutor's reference is straightforward, definite and certain. <u>State v. Burrell</u>, 944 S.W.2d 948, 951 (Mo.App. W.D. 1997). Direct references are made when the prosecutor uses words such as "defendant," "accused" and "testify" or their equivalent. <u>State v. Neff</u>, 978 S.W.2d 341, 344 (Mo. banc 1998).
>
> An indirect reference is one that is "reasonably apt" to direct the jury's attention to the defendant's failure to testify. <u>Neff</u>, 978 S.W.2d at 344. The Missouri Supreme Court has also described indirect references as those comments which, when viewed in context, would cause the jury to infer that the challenged remark was really referring to the defendant's failure to testify, <u>State v. Parkus</u>, 753 S.W.2d 881, 885 (Mo. banc 1988), <u>cert. denied</u>, 488 U.S. 900 (1988); and as those comments which clearly imply reference to defendant's failure to testify. <u>Richardson</u>, 923 S.W.2d at 314. An indirect reference requires reversal only if the prosecutor makes it with "a calculated intent to magnify" the defendant's decision not to testify so as to call it to the jury's attention. <u>Id.</u>; <u>Richardson</u>, 923 S.W.2d at 314.

Resp't Ex. E at 21-22. The State argued that the prosecutor's first reference was, at most, indirect, and was not made with "a calculated intent to magnify" petitioner's decision not to testify. <u>Id.</u> at 22. The State claimed that the remarks were made on rebuttal to demonstrate petitioner's failure to adduce any evidence that Detective Hanlon mistreated petitioner. <u>See id.</u> at 23. The

State further argued that petitioner has not even attempted to show prejudice and that, in light of the evidence of petitioner's guilt presented at trial, the prosecutor's comment did not have a "decisive effect" on the jury's determination. Id. Finally, with respect to the prosecutor's use of the word "uncontroverted," the State argued that the prosecutor was merely arguing that petitioner had not produced evidence that would create a reasonable doubt as to his guilt. See id. at 24.

The undersigned finds that the prosecutor's comments were not so egregious as to render petitioner's trial unfair. The prosecutor did not refer directly or indirectly to petitioner's failure to testify. The prosecutor's first comment, that if there were any evidence of police mistreatment it would have been heard on the witness stand, was simply made to illustrate the fact that petitioner presented no evidence to support his allegation of police misconduct. It was not made to draw attention to the fact that petitioner did not testify. Petitioner could have presented evidence other than his own testimony to support his police misconduct allegation. With regard to the prosecutor's second comment, in which he stated that the evidence was "uncontroverted," the prosecutor was again attempting to point out that petitioner had presented no evidence to support his theory of defense at trial. The prosecutor's comments did not refer to petitioner's failure to testify and thus were not improper. Even if the prosecutor indirectly referenced the fact that petitioner did not testify, as previously discussed, the State presented ample evidence of petitioner's guilt. As such, petitioner is unable to demonstrate prejudice.

Accordingly, the undersigned recommends that petitioner's third ground for relief be denied.

### 4.    Ground Four

In his fourth ground for relief, petitioner argues that the trial court erred in allowing Detective John Neske to present hearsay testimony.  Respondent contends that the detective's statements did not constitute hearsay because they were not offered for the truth of the matter asserted.

Petitioner objects to the following testimony that was elicited during the prosecution's direct examination of Detective Neske:

[PROSECUTOR]: ...Now, detective, were you assigned to do a canvass or an area canvass in that area?

[DETECTIVE NESKE]: Yes, I was.

[PROSECUTOR]: Now, did you talk to certain people?

[DETECTIVE NESKE]: Yes, I talked to a number of people.

[PROSECUTOR]: What is the purpose when you do this type of canvass?  What is the purpose in talking to people in the neighborhood?

[DETECTIVE NESKE]: See if we might develop any potential witnesses.

[PROSECUTOR]: Now can you–did you talk to some people?

[DETECTIVE NESKE]: Yes, I did.

[PROSECUTOR]: Did you talk to a John O'Connor?

[DETECTIVE NESKE]: Yes, I did.

[PROSECUTOR]: And did he give you certain information?

[DETECTIVE NESKE]: Yes, he did.

[PROSECUTOR]: Did you talk with an Erin Windau?

[DETECTIVE NESKE]: Yes, I did.

[PROSECUTOR]: Did she give you certain information?

[DETECTIVE NESKE]: Yes, she did.

[PROSECUTOR]: Did you talk with a Tim Russell?

[DETECTIVE NESKE]: Yes, I did.

[PROSECUTOR]: Did he give you certain information?

[DETECTIVE NESKE]: Yes, he did.

[PROSECUTOR]: Did you talk–well, did you talk with–obviously talked with other people in the neighborhood?

[DETECTIVE NESKE]: I spoke with Chris White.

> [DEFENSE COUNSEL]: I am going to object to anything regarding the contents of those statements.

> [PROSECUTOR]: I didn't get into that yet.

> [DEFENSE COUNSEL]: I didn't hear what he said, actually.

> [PROSECUTOR]: He said he talked to a Chris White.

> [DEFENSE COUNSEL]: Okay.

[PROSECUTOR]: Who else did you talk to?

[DETECTIVE NESKE]: I recall speaking to the Beckman sisters.

[PROSECUTOR]: After you talked with them, did you ascertain whether or not the defendant had been in that neighborhood?

[DETECTIVE NESKE]: Yes, I did ascertain–

> [DEFENSE COUNSEL]: Judge, I object. It's hearsay.

> [PROSECUTOR]: Well, I am getting–it's an exception to the hearsay rule to show subsequent police conduct. It's admissible, for one reason. It's also admissible for another. I can certainly get into that to show subsequent police conduct.

> THE COURT: Overruled.

[PROSECUTOR]: Now, after you talked with them, received certain information, did you put out an arrest warrant or request for a pick up on Johnathan Irons?

[DETECTIVE NESKE]: Yes, I placed in the computer a wanted.

Resp't Ex. A2 at 159-61.

Petitioner raised this claim on direct appeal of his convictions. The Missouri Court of

Appeals denied petitioner's claim based upon the law and argument set forth in the State's brief.

See Resp't Ex. G at 5. The State argued as follows in its brief:

> The trial court did not abuse its discretion in allowing the challenged
> testimony. Whether to admit or exclude evidence is a matter of the trial court's discretion.
> State v. McNeal, 986 S.W.2d 176, 179 (Mo.App. E.D. 1999). The trial court is in the best
> position to weight the probative value of the evidence against its prejudicial effect. Id. On
> review, this Court will not interfere with the trial court's ruling absent an abuse of
> discretion. Id.

Resp't Ex. E at 27-28. The State noted that petitioner did not object to the officer's testimony

that he issued an arrest warrant after speaking to certain individuals, and that petitioner's claim is

thus not preserved for appeal. See id. at 28. The State then argued:

> In any event, the evidence at issue was not inadmissible hearsay. Hearsay is an
> out-of-court statement offered to prove the truth of the matter asserted. State v. Parker,
> 886 S.W.2d 908, 925 (Mo. banc 1994), cert. denied 514 S.Ct. 1098 (1995); State v.
> Davenport, 924 S.W.2d 6, 10 (Mo.App. E.D. 1996). In this case, there were no
> statements offered for their truth. Rather, the evidence was offered to show subsequent
> police conduct–specifically, why police focused their investigation on [petitioner]–and was
> therefore admissible. See State v. McNeal, 986 S.W.2d 176, 179 (Mo.App. E.D. 1999)
> (hearsay statements admissible to explain subsequent conduct of police in pursuing
> defendant); State v. Anderson, 862 S.W.2d 425, 433 (Mo.App. E.D. 1993) (statement
> admissible for nonhearsay purpose of showing why police investigation focused on
> defendant); see also State v. Howard, 913 S.W.2d 68, 70 (Mo.App. E.D. 1995) ("Out-of-
> court statements that explain subsequent police conduct are admissible to supply relevant
> background and continuity") (footnote omitted).

Resp't Ex. E at 28-29.

The undersigned finds that the statements were admissible as explanation of subsequent

police conduct. The Missouri Supreme Court has stated that "statements made by out-of-court

declarants that explain subsequent police conduct are admissible, supplying relevant background

and continuity." State v. Dunn, 817 S.W.2d 241, 243 (Mo. 1991) (en banc). Such statements are

not offered for the truth of the matter asserted, and, therefore, are not hearsay. State v. Davenport, 924 S.W.2d 6, 10 (Mo. Ct. App. 1996). In this case, the alleged instances of hearsay statements by Detective Neske are clearly explanatory of why the police issued an arrest warrant for petitioner. As stated earlier in connection with petitioner's Ground One, questions concerning the admissibility of evidence are matters of state law and the issue on habeas review is not whether the evidence was properly admitted under state law. See Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). The decision of the Missouri Court of Appeals was not contrary to or an unreasonable application of clearly established federal law.

Accordingly, the undersigned recommends that this ground for relief be denied.

### 5. Ground Five

In his fifth ground for relief, petitioner argues that the motion court erred in not issuing sufficient findings of fact and conclusions of law with regard to his postconviction relief motion. Respondent contends that petitioner's claim is noncognizable.

The court finds that this claim is not cognizable in the court's habeas review. "[A]n infirmity in a state-post conviction proceeding does not raise a constitutional issue cognizable in a federal habeas corpus petition." See Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir. 1997). This rule is founded on the principle that there is no constitutional right to a state postconviction proceeding and irregularities which occur therein do not rise to the level of constitutional violations. See Pennsylvania v. Finley, 481 U.S. 551, 557, 106 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987); Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991). Because petitioner was not constitutionally entitled to a postconviction proceeding, he cannot claim constitutional error in the fact that the motion court failed to issue specific findings of fact and conclusions of law in its decision denying his postconviction motion.

Accordingly, the undersigned recommends that this ground for relief be denied.

**6.** **Ground Six**

In his sixth ground for relief, petitioner argues that trial counsel provided ineffective assistance of counsel in failing to object to the prosecutor's statements, evidence, and arguments regarding an uncharged burglary. Respondent contends that the Missouri Court of Appeals properly found that trial counsel was effective in choosing not to make a non-meritorious objection.

Petitioner claims that trial counsel should have objected on three separate occasions. First, during opening statement, the prosecutor stated the following:

> On Tuesday, January 14th, 1997...when [Stanley Stotler] walked into his master bedroom in his house at 1305 Shallow Lake Drive, which is in St. Charles County, he heard a closet door kind of click and this was a door–I think Mr. Stotler will testify that would shut, but you could close, but if you really happened to close it, you pushed it, he heard this door click and he had been burglarized a few weeks before, back around December 16th of 1996, and he immediately becomes suspicious.

Resp't Ex. A2 at 53-54. Next, during the prosecutor's direct examination of Mr. Stotler, the following exchange occurred:

> [PROSECUTOR]: Now, I want you to back up. I want to take you back to around December 16, 1996. Were you living there at 1305 Shallow Lake Drive on that occasion?
>
> [MR. STOTLER]: Yes, I was.
>
> [PROSECUTOR]: And did something unusual happen there around December 16th, 1996?
>
> [MR. STOTLER]: Yes, it did. I came home that evening probably little earlier than 6:30 and walked in and found that my entire house had been ransacked. A number of items had been stolen and everything in the house had pretty much been torn out and scattered about.
>
> [PROSECUTOR]: Speaking of December the 16th, 1996, was there some cash or some money missing from your house at that occasion?

[MR. STOTLER]: Yes, I had over two hundred dollars of cash that I had in my closet missing.

[PROSECUTOR]: Okay. Now, where was that closet that it was missing from located?

[MR. STOTLER]: It was in the master bedroom.

[PROSECUTOR]: Now, I want to jump back to January 14, 1997. Are you with me? After you go into your master bedroom, what did you do next?

[MR. STOTLER]: Well, I walked into the bedroom, and upon immediately walking into the bedroom I heard the closet door click shut and it's the type of door that you have to pull tight to get it to click shut.

[PROSECUTOR]: When you heard this closet door click shut, was that the same closet door or the same closet that the money had been missing from in January–December of 1996?

[MR. STOTLER]: Yes. There was money missing from that closet.

[PROSECUTOR]: When you heard the closet door click there on the evening of January 14th, 1997, what did you do?

[MR. STOTLER]: Well, as soon as I heard it click, that told me that someone had been–had to be inside pulling it shut, otherwise it would not click.

\*\*\*

[PROSECUTOR]: What is depicted in State's exhibit twelve?

[MR. STOTLER]: This is a partial photograph of my kitchen showing the doorway to the garage.

[PROSECUTOR]: What is that red item depicted in State's exhibit twelve?

[MR. STOTLER]: I installed a brace on the door that would keep you from being able to push it in from the outside.

[PROSECUTOR]: Why did you do that?

[MR. STOTLER]: I installed that shortly after the break-in and robbery that took place in December of 1996.

[PROSECUTOR]: Offer State's exhibit twelve, your Honor.

[DEFENSE COUNSEL]: No objection.

THE COURT: State's exhibit twelve will be admitted into evidence.

\*\*\*

[PROSECUTOR]: What is depicted in State's exhibit thirteen?

[MR. STOTLER]: This is the device that I installed on the door leading from the back of the garage to the outside of the house.

[PROSECUTOR]: Why did you install that safety device?

[MR. STOTLER]: The people that entered the house in December and robbed me pried that door open. This device would make it impossible to open that door from the outside.

[PROSECUTOR]: That's the garage door part?

[MR. STOTLER]: Yes, this is leading out of the garage.

[PROSECUTOR]: And the door depicted in twelve is the door that was kicked in in December of–excuse me, January of 1997?

[MR. STOTLER]: No.

[PROSECUTOR]: Okay, what is that door?

[MR. STOTLER]: That is the door leading from the garage to the kitchen.

[PROSECUTOR]: To the kitchen?

[MR. STOTLER]: Right.

[PROSECUTOR]: That was where entry was gained?

[MR. STOTLER]: On what date?

[PROSECUTOR]: On the 16th of December?

[MR. STOTLER]: December, yes, that is.

    \*\*\*

[PROSECUTOR]: Offer thirteen.

[DEFENSE COUNSEL]: No objection to State's exhibit thirteen.

THE COURT: State's exhibit thirteen will be admitted into evidence.

Resp't Ex. A2 at 63-64, 79-81. Finally, during closing argument, the prosecutor made the

following statement:

> Now, I want you to go back, there was also testimony that his house had been burglarized
> back on December 16th, 1996, about three weeks before this happened. Can you imagine
> the fright and chills that went up that man's spine when he heard that door click...
> ***
> Stotler testified he certainly gave nobody permission to come in there. And you know
> what he was going in there for–you heard Stotler testify back in December that he had had
> a burglary. He put up these very barriers to make it harder to get in. First burglary was
> through a garage and then in through the kitchen door from the garage. This one is
> through a basement window kicked out. He also testified that he lost two hundred some
> dollars in the first burglary and that money–and in that first burglary was in that closet that
> [petitioner] was standing in. He got caught in the process of burglarizing, Stotler came
> home at the wrong time and caught him.

Resp't Ex. A3 at 308-09, 312.

At the evidentiary hearing held in connection with petitioner's postconviction motion, trial

counsel testified that she did not object to the evidence, statements, and testimony cited above

because:

> [Petitioner] wasn't considered a suspect in the crime...[that occurred on] December
> 16th...[T]here wasn't any argument or evidence that there wasn't anything that the
> prosecutor did to try to show that he was involved in that in any way, shape or form...[M]y
> recollection is that there wasn't any attempt to try and tie [petitioner] to that offense of
> December 16.

Resp't Ex. H at 22-23. In addition, the prosecutor testified as follows at petitioner's evidentiary

hearing:

> Stotler's home had been burglarized earlier. He had put a bar across a particular door
> where the entry was, so when he came in that night he saw something had been disturbed
> so he was very suspicious, and went into his bedroom. That's the deal and [petitioner's]
> name was never mentioned during this burglary. Now, the jury can draw whatever
> inference they want to on something like that, but what the evidence was introduced for
> was to show why he was suspicious and why he went into the bedroom looking for
> someone.

Id. at 20-21.

Petitioner raised this same claim on appeal from the denial of postconviction relief. The Missouri Court of Appeals held as follows:

> Generally, evidence of prior uncharged crimes and prior bad acts are inadmissible in a criminal prosecution for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Bolds*, 11 S.W.3d 633, 638 (Mo.App. E.D. 1999). To violate this general rule, the evidence must show that the defendant committed, was accused of, was convicted of, or was definitely associated with, the other crimes or misconduct. *Id.* Vague references are not characterized as clear evidence associating a defendant with other crimes. *Id.*
>
> We find that trial counsel's failure to object to the prosecutor's statements, evidence, and argument regarding the December 1996 burglary of Stotler's home was not deficient performance because the statements, evidence, and argument did not directly connect [petitioner] to the alleged crime. The statements, evidence, and argument occurred in the context of establishing the reason for Stotler's response during the incident for which [petitioner] was convicted. Trial counsel is not ineffective for failing to object to admissible evidence, *State v. Parker*, 886 S.W.2d 908, 932 (Mo. banc 1994), as the cited portions above arguably were. Accordingly [petitioner's] point two on appeal is denied.

Resp't Ex. L at 10.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances, and additionally, the petitioner must show that he was prejudiced by his attorney's action or inaction. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. "Prejudice" is shown by a petitioner when it is demonstrated that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id. at 694, 104 S.Ct. at 2068. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Id. The petitioner must not only assert prejudice, but must affirmatively prove that prejudice was present. See id. at 693, 104 S.Ct. at 2067.

Here, trial counsel testified that she did not object to the challenged statements, evidence, and testimony because petitioner was not implicated in the December 1996 robbery and the prosecutor did not attempt to tie petitioner to that crime. A review of the relevant statements, evidence, and testimony confirms that the prosecutor did not attempt to connect petitioner to the prior burglary. Rather, the prosecutor was merely trying to explain the victim's response on the day of the robbery for which petitioner was charged. As such, trial counsel did not err in failing to object to the references to the prior burglary. Thus, the decision of the Missouri Court of Appeals was not contrary to or an unreasonable application of clearly established federal law.

Accordingly, the undersigned recommends that petitioner's sixth ground for relief be denied.

### 7.    Ground Seven

In his seventh ground for relief, petitioner argues that trial counsel provided ineffective assistance of counsel in failing to object to the prosecutor's alleged reference to petitioner's failure to testify and to petitioner's future dangerousness during closing argument. Respondent contends that the Missouri Court of Appeals properly applied Strickland and found that trial counsel did not provide ineffective assistance.

Petitioner first objects to the following statement made by the prosecutor during closing argument:

> You haven't heard anything to controvert the evidence that you have heard on that witness stand that that man, [petitioner], was the person in that house that shot Stanley Stettler. There is not one scintilla of evidence to refute that.

Resp't Ex. A3 at 326. Petitioner also objects to the following statements:

> Now, don't forget the testimony which we read from Lieutenant Hanlon where he said when he talked to [petitioner], he said he had gotten drunk and remembered breaking out the window, but recalled very little about what happened inside the house. That's denial. Is that an excuse, you get drunk–you get drunk? You want him out on the street?

> That young man is a dangerous person.  Look what he did to Mr. Stotler...Don't be soft because he is young.  He is as dangerous as somebody five times that age.

Resp't Ex. A3 at 313, 326, 327-28.

At the evidentiary hearing held in connection with petitioner's postconviction motion, trial counsel testified that, although she could not recall her specific reasons for not objecting to the above statements, in determining whether to object during closing argument she considers whether the argument was improper, whether she had already made the same objection and the result of such, and whether she wants to draw attention to the argument.  See Resp't Ex. H at 27.

Petitioner raised this claim on appeal from the denial of postconviction relief.  The Missouri Court of Appeals held:

> We first address the issue regarding [petitioner's] failure to testify.  It is improper for a prosecutor to comment directly or indirectly on a defendant's failure to testify.  *State v. Richardson*, 923 S.W.2d 301, 314 (Mo. banc 1996).  A direct reference to a defendant's failure to testify is made when a prosecutor uses words such as "defendant," "accused" and "testify" or their equivalent.  *Id.*  An indirect reference clearly implies the defendant's failure to testify and is improper only if the prosecutor demonstrates a calculated intent to magnify the defendant's failure to testify so as to call it to the jury's attention.  *Id.*
>
> We find that the prosecutor did not comment directly or indirectly on [petitioner's] failure to testify.  Merely stating that the evidence is "uncontradicted" or "undisputed" or that a defendant failed to offer evidence is not a direct reference to the defendant's failure to testify.  *Id.*  Further, we find no obvious intention by the prosecutor to call the jury's attention to [petitioner's] failure to testify or to attempt to shift the burden of proof.  Rather, the prosecutor's comments refer to the lack of defense evidence and consequently the relative weakness of [petitioner's] case.
>
> We next address the issue regarding personalization and future dangerousness.  Closing argument is considered personalized only if it suggests personal danger to the jurors or their families if the defendant is acquitted.  *State v. Phillips*, 940 S.W.2d 512, 519 (Mo. banc 1997).  Further, the prosecutor may argue that the jury should send a message that criminal conduct will not be tolerated.  *Id.* at 520.
>
> We find that the prosecutor's comments did not attempt to instill fear in the jurors by making them believe [petitioner] would physically harm them or their families if acquitted.  Nor did the argument identify any specific future crime that [petitioner] might commit because of an alleged future dangerousness.  The context of the argument indicates that the prosecutor commented on [petitioner's] dangerousness in light of the crime for

which he was on trial. The argument was not so strong as to incite the passions of the jury or to prejudice [petitioner].

We find that the prosecutor's comments did not exceed the bounds of permissible closing argument, and thus, trial counsel's failure to object to the cited portions above was not deficient performance. Accordingly, [petitioner's] point three on appeal is denied.

Resp't Ex. L at 11-13.

The undersigned finds that trial counsel did not err in failing to object to the prosecutor's alleged reference to petitioner's decision not to testify. The prosecutor did not refer directly or indirectly to petitioner's failure to testify. As discussed with regard to petitioner's third ground for relief, the prosecutor was merely attempting to point out that petitioner had presented no evidence to support his theory of defense at trial. The prosecutor's comments did not refer to petitioner's failure to testify and were not improper. Thus, trial counsel did not provide ineffective assistance in failing to make a meritless objection.

Further, trial counsel was not constitutionally ineffective in failing to object to the prosecutor's alleged reference to petitioner's future dangerousness. Respondent concedes that the prosecutor's comment regarding petitioner's future dangerousness may have been improper, yet argues that petitioner is unable to demonstrate prejudice. The undersigned agrees. Although the prosecutor's remarks were improper, the remarks did not rise to the level of depriving petitioner of a fair trial. Petitioner cannot demonstrate that the outcome of the trial would likely have been different without these remarks, especially in light of the overwhelming evidence of petitioner's guilt presented at trial.

Accordingly, the undersigned recommends that petitioner's seventh ground for relief be denied.

**C.** **Motion to Expand the Record and Request for an Evidentiary Hearing**

As noted above, petitioner has filed a Motion to Expand the Record and Request for an Evidentiary Hearing. (Doc. No. 20). The undersigned will address each motion separately.

**1.** **Motion to Expand the Record**

Petitioner argues that the record as it is before the court is incomplete and requests that the court expand the record pursuant to Rule 7(a) of the Rules Governing Section 2254 Cases. Rule 7(a) provides that "[i]f the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition." Rule 7(a), 28 U.S.C. § 2254 (2004). Petitioner requests that four particular items be included in the record.

First, petitioner seeks to include State's Exhibit #47, the O'Fallon Police Department Acknowledgment and Waiver of Rights form, which relates to the merits of petitioner's first ground for relief. Respondent does not object to the inclusion of State's Exhibit 47 because it was a matter before the state trial court. Respondent has submitted State's Exhibit 47 as Respondent's Exhibit M. The undersigned has considered this exhibit in determining petitioner's first ground for relief. Thus, petitioner's motion will be granted as to this item.

Petitioner next requests that the court include the preliminary hearing transcript, which petitioner argues is relevant to his second ground for relief. Respondent contends that the court should decline this request because the preliminary hearing transcript was not submitted to the state court at the time of trial. In his second ground for relief, petitioner argued that the trial court erred in allowing the prosecutor to state during closing argument that a witness had identified petitioner at a preliminary hearing because the preliminary hearing transcript was not in evidence. It is not necessary for the court to review the preliminary hearing transcript to determine whether

the prosecutor erred in referring to the preliminary hearing. Thus, the court will deny petitioner's request to include this item.

The third item petitioner seeks to admit is the 911 Transcript, which petitioner claims is relevant to the merits of his claim because it "contains the initial recollection of the complaining witness and his inability to identify any distinguishing characteristics of his attacker." Petitioner's Memorandum in Support of Motion to Expand the Record and Request an Evidentiary Hearing at 4. Petitioner also requests that the court include the transcript of Stanley Stotler's deposition, which petitioner argues further demonstrates Mr. Stotler's previous inability to identify petitioner. Petitioner contends that the flawed identification of petitioner at trial is relevant to his petition because the state courts relied on the "overwhelming evidence of guilt" presented at trial in denying petitioner's claims. See id. at 6. Respondent argues that the court should not expand the record to include the transcript of the 911 call or the deposition of Mr. Stotler because petitioner did not present these items in his defense at trial and petitioner does not make a free-standing claim of innocence. The undersigned finds that these items are not relevant to the determination of petitioner's claims and will thus deny petitioner's request to include these items. The court discussed in this Report and Recommendation the overwhelming evidence of petitioner's guilt presented at trial, which includes evidence other than the identification of petitioner by the complaining witness. See pages 11-12 above.

Accordingly, petitioner's Motion to Expand the Record will be granted as to State's Exhibit 47 and denied as to all other items.

### 2. Evidentiary Hearing

Petitioner also requests an evidentiary hearing as to each of his grounds for relief. A federal habeas petitioner's right to an evidentiary hearing is governed by 28 U.S.C. § 2254(e)(2). This provision provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
>> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (2004).

The Supreme Court addressed § 2254(e)(2) in Williams v. Taylor, 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). In Williams, the Court construed the phrase "failed to develop the factual basis of a claim in State court proceedings" and determined that the phrase means lack of diligence on the part of the petitioner. See Williams, 529 U.S. at 430, 120 S.Ct. at 1487. Specifically, the Court held: "Under the opening clause of 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Id. at 432, 120 S.Ct. at 1488. Furthermore, the Court reasoned that "[t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of 'failed' is to ensure the prisoner undertakes his own diligent search for evidence." Id. at 435, 120

S.Ct. at 1490.  To satisfy the diligence requirement, a petitioner "at a minimum [must] seek an evidentiary hearing in state court in the manner prescribed by state law."  Id. at 437, 120 S.Ct. at 1490.

The diligence requirement exists to preserve comity between the State and Federal courts. "Comity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."  Id. at 437, 120 S.Ct. at 1490-91 (quoting O'Sullivan v. Boerkel, 526 U.S. 838, 844, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999)).  In this regard, the Supreme Court in Williams explained:

> For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met. Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings. Yet comity is not served by saying a prisoner 'has failed to develop the factual basis of a claim' where he was unable to develop his claim in state court despite diligent effort. In that circumstance, an evidentiary hearing is not barred by § 2254(e)(2).

Id. at 437, 120 S.Ct. at 1491.

The court finds that an evidentiary hearing in this case is neither warranted nor necessary. Petitioner alleges no new rule of constitutional law that was previously unavailable or any new factual predicate that could not have been previously discovered through the exercise of due diligence.  On the contrary, the record developed by the state courts is sufficient for the court to determine the validity of these claims.  Without these allegations, it cannot be determined, let alone shown, that any "facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found

the applicant guilty of the underlying offense." 28 U.S.C. § 2254 (e)(2)(B). Thus, granting an evidentiary hearing in this case "would not assist in the resolution of [petitioner's] claim[s]." Johnston v. Luebbers, 288 F.3d 1048, 1059 (8th Cir. 2002) (quoting Breedlove v. Moore, 279 F.3d 952, 960 (11th Cir. 2002)). Besides, petitioner did have an evidentiary hearing on his motion for postconviction relief.

Accordingly, petitioner's request for an evidentiary hearing is denied.


**D.    Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. See 28 U.S.C. § 2253(c)(2); Hunter v. Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)). In this case, petitioner has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no certificate of appealability be issued.

## ORDER

**IT IS HEREBY ORDERED** that petitioner's Motion to Expand the Record (Doc. No. 20) be **granted** as to State's Exhibit 47 and **denied** as to all other items.

**IT IS FURTHER ORDERED** that petitioner's Request for Evidentiary Hearing (Doc. No. 20) be and it is **denied.**

**IT IS FURTHER ORDERED** that petitioner's Motion for Release on Recognizance or Surety Pending the Final Decision of the U.S. District Court For the Eastern District of Missouri, with Suggestions in Support Thereof (Doc. No. 24) be and it is **denied as moot**.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the petition of Johnathan H. Irons for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied.**

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be issued.


The parties are advised that they have eleven (11) days, until August 4, 2006, in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this 24th  day of July, 2006.

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE